IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| EDWARD H. SAUNDERS, JR., | ) | Civil Action No.: 4:05-00767-GRA-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| BUREAU OF PRISONS, MICKY RAY, | ) | |
| JOSE SERRANO, L. GUEVARA G. | ) | |
| VICTOR LORANTH, JEFFREY GEER, | ) | |
| A. ROGER LAMB, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Edward Saunders, ("plaintiff" or "Saunders") filed this action pursuant to

Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), in the

United States District Court of the District of Columbia. The case was transferred to the United

States District Court for the Western District of Virginia on November 3, 2004. Plaintiff raised seven

separate claims which arose during his incarceration at the United States Penitentiary Atlanta,

Georgia (USP Atlanta), United States Penitentiary Coleman, Florida (USP Coleman), United States

Penitentiary Lee, Virginia (USP Lee), and Federal Correctional Institution Edgefield, South Carolina

(FCI Edgefield).  By Order filed March 11, 2005, the United States District Court of the Western

District of Virginia issued an order severing the claims and transferring them to the appropriate

districts for proper disposition. Further, a review of the order from the Western District of Virginia

states "that Claim 5, as to medical claims which arose while plaintiff was incarcerated at FCI

Edgefield, is TRANSFERRED to the United States District Court for South Carolina. . ." Thus, the

only claim before this court involves medical claims.

On April 12, 2005, a proper form order was issued advising plaintiff to place his allegations pertaining to claim number five only on a complaint form provided by the Court. The order directed plaintiff not to list individuals in the caption who were involved in the claims raised in his initial petition, since only allegations pertaining to his incarceration while at FCI-Edgefield were transferred to the District of South Carolina. Plaintiff filed an amended complaint on January 3, 2006, listing defendants from districts other than the District of South Carolina and containing allegations related to claims other than the one transferred to the District. In the amended complaint, plaintiff alleges his complaint is for money damages against the Bureau of Prisons and against the defendants in their individual capacities for violations of his civil and constitutional rights, pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff alleges medical indifference because they refused to allow plaintiff to see an ophthalmologist causing him physical and emotional damages. Further, plaintiff alleges in his amended complaint that defendants conspired to deprive him of his First Amendment right to petition the Government for redress of a grievance and transferred him to a facility which was unable to provide him with required treatment in retaliation for filing grievances.[1] Saunders seeks as award of $2,000,000.00 for actual, compensatory and punitive damages.[2]

Plaintiff filed a motion for summary judgment on May 12, 2006. Defendants filed a motion to dismiss, or in the alternative a motion for summary judgment on June 2, 2006.  Because the

---

[1]  The plaintiff is an inmate presently incarcerated at the Lee County United States Penitentiary in Jonseville, Virginia.

[2]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

plaintiff is proceeding *pro se*, he was then advised on June 6, 2006, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. Plaintiff did not file a response in opposition but filed a motion to strike all Government pleadings.

## II. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff filed a motion for entry of default judgment on May 10, 2006. In this motion, plaintiff first argues a default judgment should be entered against defendants Jose Serrano and L. Guevara because they did not file an answer within 20 days after March 2, 2006, the date of service. Second, plaintiff argues a default judgment should be entered against defendants Ray Holt and Harrell Watts because these defendants did not file an answer within 20 days after March 3, 2006, the date of service. Third, plaintiff asserts default judgment should be entered against defendants McKelvey, Green, and Coll because they did not file an answer within 20 days after March 6, 2006, the date of service.

As to these assertions, plaintiff's motion is without merit. Rule 12(a)(3)(A) of the Federal Rules of Civil Procedure provides that an officer or employee of the United States sued in an individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States shall serve an answer to the complaint within sixty (60) days after the date of service on the officer or employee, or service on the United States Attorney, whichever is later. On May 3, 2006, defendants filed a motion for extension of time to respond to the amended complaint until June 3, 2006. This motion was granted on May 25, 2006. Defendants filed a motion

to dismiss on June 2, 2006. Thus, plaintiff's motion for entry of default should be denied.

Plaintiff further asserts that Kathleen Hawk-Sawyer, the former director of the BOP in Washington, D.C., Harrell Watts, The National Inmate Appeals Administrator in Washington, D.C., and Ray Holt, the Southeast Regional Director located in Atlanta, Georgia, are in default. The undersigned issued an order giving counsel for the BOP, Barbara Bowens, ten (10) days to inform the court if she represents these defendants. A response was filed in which counsel for the BOP asserts that defendants Hawk-Sawyer, Watts, and Holt were not parties to the South Carolina case. Further, it is argued that plaintiff has not alleged that these three defendant administrators were involved in the medical treatment provided to the plaintiff in South Carolina and believed they were not parties to the South Carolina litigation based on the District Court's order severing the case that the only claim sent to South Carolina was claim number 5 which arose at FCI Edgefield. It is argued that these defendants are not located in South Carolina and are not within the jurisdiction of this court. Thus, it was asserted since these three defendants have no connection to claim 5, they should be dismissed *sua sponte* by the court.

Based on the confusion resulting from the severance of these claims into separate claims in separate districts and for the reasons argued by counsel in her response to the order of January 8, 2007, these defendants have shown good cause why plaintiff's motion for entry of default judgment should be denied. Also, Federal Rule of Civil Procedure 55(e) provides that "no default judgment may be entered against the United States or any federal agency or officer, unless the plaintiff established for the court, by satisfactory evidence, a claim or right to relief." As discussed below, plaintiff has failed to exhaust his administrative remedies and for the same reasons, these defendants are entitled to summary judgment.

4

Therefore, it is recommended that plaintiff's motion for entry of default judgment (document #75) be denied.

## III.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

In his amended complaint, plaintiff asserts he was transferred on July 21, 1999, from USP Atlanta to FCI Edgefield. Plaintiff argues that on July 23, 1997, an Intake Screening Review was conducted by defendant Dr. Serrano, the Clinical Director for the BOP, FCI Edgefield, South Carolina, (def. Exhibit #2) who recommended and approved a visual fields examination be performed on plaintiff and that he be seen by an ophthalmologist. Plaintiff asserts that on July 23, 1999, the baseline visual fields examination was performed on him by defendant Lamb, a Mid-Level Practitioner at FCI Edgefield during the time period alleged in the complaint. (Def. Exhibit #4). Plaintiff alleges Lamb was overseen by defendant Dr. Victor Loranth at FCI Edgefield who is employed by the BOP as the Clinical Director. (Def. Exhibit #3). Plaintiff alleges his baseline visual fields examination was reviewed by defendants Loranth and Geer[3] on July 23, 1999. Plaintiff alleges defendants Serrano and Guevara referred plaintiff on August 4, 1999, as a glaucoma suspect to defendant Geer to treat plaintiff as a glaucoma suspect. Plaintiff alleges  that defendant Geer recommended and had approved by defendants Serrano and Guevara for a second visual fields examination to be performed.  On November 5, 1999, plaintiff asserts a second baseline visual fields examination was performed by defendant Lamb and supervised by defendant Loranth and the results

---

[3] Defendants assert in a footnote that Jeffrey R. Geer is a contract Optometrist and is not a federal employee. Defendants assert that based on Pacer, Geer has not been served and is not represented by the United States Attorney's Office.

were reviewed by defendants Serrano and Guevara on November 10, 1999, who sent the results to defendant Geer for review. Defendants Geer and Loranth determined the second baseline visual fields examination was unreliable and ordered a third baseline visual fields examination to be performed on the plaintiff and defendants Serrano and Guevara consented. Plaintiff asserts the third baseline visual fields examination was performed on February 19, 2000, and reviewed by defendant Geer on March 3, 2000, who also examined and diagnosed plaintiff as having glaucoma. Plaintiff alleges that defendant Geer examined him again on May 17, 2000, and prescribed Xalatan eye medication for the glaucoma. Plaintiff asserts that he was counseled on the use and side effects of the Xalatan eye medication by defendants Montolia, Loranth and Geer. Plaintiff alleges the eye medication was consented to and approved by defendants Serrano and L. Guevara. Plaintiff asserts he was re-examined by Geer on September 20, 2000, at which time plaintiff complained to defendant Geer that he was experiencing blurred vision, hair loss, and skin disorders from taking the Xalatan. However, plaintiff alleges defendant Geer instructed him to continue using the eye medication instead of referring him to an ophthalmologist. Plaintiff alleges he informed defendant Serrano of the vision loss, hair loss, and skin disorders associated with using Xalatan and Serrano instructed plaintiff to continue using the Xalatan and refused to send him to another doctor. Plaintiff asserts that he informed defendant Serrano that he did not believe he had glaucoma. Plaintiff asserts he was given a follow-up examination by defendant Geer on January 26, 2001, who refused to refer him to another doctor after plaintiff requested due to vision loss, hair loss, and skin disorder associated with using Xalatan. Plaintiff alleges that he complained again to defendant Geer when he was examined on April 20, 2001,of the vision loss, hair loss, and skin disorders to no avail. Plaintiff asserts defendant Geer instructed plaintiff to continue using the medication, to follow-up in four months and

refused to refer plaintiff to a doctor specializing in Glaucoma. Plaintiff alleges defendant Serrano reviewed defendant Geer's consultation report and consented to and approved the continuous administering of the Xalatan even though he knew plaintiff was experiencing vision loss, hair loss, and skin disorders from taking the medication. Plaintiff asserts defendant Serrano failed to stop or intervene with defendant Geer administering the Xalatan to plaintiff. On May 7, 2001, plaintiff asserts defendant Serrano consented to and approved the refilling of the Xalatan eye medication and scheduled the plaintiff to return for a routine follow-up examination on August 7, 2001. Plaintiff asserts that in August 2001, he was transferred under the guise of population increase to a maximum security penitentiary in Coleman, Florida, as retaliation for his continuous complaints and requests to be seen by an ophthalmologist. All claims subsequent to being transferred to Coleman, Florida, will not be dealt with by this court in that those claims were transferred to the appropriate United States District Court in Florida.

### B.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleading is appropriate.  Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed. R. Civ. P.

When no genuine issue of any material fact exists, summary judgment is appropriate. <u>Shealy</u>

v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party.  Id.  While the court is to afford liberal consideration to a complaint filed by a pro se plaintiff, it is not required to ignore a clear failure of proof with respect to any question of fact.  To the contrary, " 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).  "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."  Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial."  Baber v. Hosp. Corp. of Am. , 977 F.2d 872, 874-75 (4th Cir. 1992).  The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995).  Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  Baber, citing Celotex

Corp., supra.  Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7.  Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987), and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

## C. EXHAUSTION

Defendants first argue plaintiff has failed to exhaust his administrative remedies as to claims regarding his confinement at FCI Edgefield. Defendants submitted the declaration of Roy Lathrop, a Paralegal Specialist for the Federal Bureau of Prisons, South Carolina Consolidated Legal Center (SCCLC) located at FCI Edgefield, South Carolina. Lathrop states that included in his official duties is the responsibility of researching logs and records maintained by the BOP concerning administrative remedies. Lathrop states he conducted a search of the administrative records maintained by the BOP and determined that plaintiff has failed to file any administrative remedies alleging the former Warden and medical staff at FCI Edgefield violated his constitutional rights, were deliberately indifferent to his medical needs, and transferred him to another institution in retaliation for filing administrative grievances. Lathrop declares that plaintiff filed three grievances concerning his conditions of confinement at FCI Edgefield. The three grievances consisted of wanting his telephone restriction lifted during peak calling hours, asserting a phone book mailed to him was erroneously rejected by mail room staff, and alleging his telephone restriction was unfair and violated his rights. (Defendants' Exhibit 1).

9

As previously stated, plaintiff has not filed a response to defendants' motion to dismiss or motion for summary judgment. However, in reviewing plaintiff's motion for summary judgment and memorandum, plaintiff states he filed an "Informal Resolution against defendants located at the Federal Correctional Complex United States Penitentiary Coleman, Florida ("USP Coleman") and Administrative Appeals complaining of the medical treatment while at USP Coleman but does not allege or provide any evidence of exhausting his administrative remedies with respect to complaints while at FCI Edgefield.

Plaintiff's claims should be dismissed as he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e. Congress, in enacting the Prison Litigation Reform Act of 1996[4] (the "PLRA"), carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended § 1997e so that it now provides, "No action shall be brought with respect to prison conditions[5] under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before plaintiff may proceed with any claim against any defendant in this Court, he must first exhaust his administrative remedies as to that specific claim and as to that specific defendant . Ross v. County

---

[4]Pub. L. No. 104-134, Title VIII, 110 Stat. 1321-66.

[5]The PLRA does not define the term "prison conditions" for use in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

Id. § 3626(g)(2). See Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir. 1999) (specifically requiring exhaustion of plaintiff's equal protection claim). The Second Circuit derives its definition from existing case law, defining prison conditions as "'those aspects of prison life affecting the entire prison population, such as the food, medical care, recreational facilities and the like,'" including "action affecting the prisoner [that] was dictated by prison policy or reflected a facility-wide practice affecting the entire inmate population." Neal v. Goord, 267 F.3d 116, 2001 WL 1178293 (2d Cir., Oct 04, 2001) (quoting Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001) (per curiam)). Both of these definitions encompass Plaintiff's claims herein.

of Bernalillo, 365 F.3d 1181, 1188-90 (10th Cir. 2004). Under BOP regulations, an inmate must first complete an informal resolution of his complaint.  See id. § 542.13.  The regulations permit an inmate to then "seek formal review [from the Warden] of an issue which relates to any aspect of [his] confinement."  Id. § 542.10; see id. § 542.14.  An inmate who is not satisfied with the Warden's response may appeal his complaint to the BOP's Regional Director.  See id. § 542.15(a).  "Finally, the inmate may appeal his case to the General Counsel in the Central Office of the Bureau of Prisons, which is the 'final administrative appeal.'"  Garrett v. Hawk, 127 F.3d 1263, 1266 (4th Cir. 1997) (quoting 28 C.F.R. § 542.15(a)).

Based on the above reasons, it is recommended that defendants' motion for summary judgment (document #81) be GRANTED. It is further recommended that plaintiff's motion for summary judgment (Document #77) be DENIED.

## IV.  CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that the defendants' motion for summary judgment (document # 81) be GRANTED as to all defendants, plaintiff's motion for summary judgment (document #77) be DENIED and plaintiff's motion for entry of default (document #75)  be DENIED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 26, 2007
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**